## MAY *v.* TENNEY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF COLORADO.

No. 99. Argued December 22, 1892. — Decided March 6, 1893.

A chattel mortgage of the stock of goods in a store in Colorado, given to secure the mortgagees for their liability as endorsers of notes of the mortgagor, is held to be a chattel mortgage, and not a general assignment for the benefit of creditors.

In Colorado a general transfer of property by a debtor for the benefit of a preferred creditor, does not, if found to be in violation of the policy of the State as expressed in its legislation, become a general assignment for the benefit of all creditors, without preferences, but is entirely void.

ON March 24, 1887, Samuel Rich, a clothing merchant of Leadville, Colorado, executed to the appellants, May and Hirsch, an instrument conveying certain personal property, which instrument was called a chattel mortgage, and was duly acknowledged and recorded. The instrument sets forth, in separate paragraphs, nine notes to the Carbonate Bank of Leadville, the payment of eight of which were endorsed or guaranteed by May or Hirsch, severally. On the first note neither May nor Hirsch's name appears. After this description, which is full and specific as to each note, the instrument goes on further to recite:

" And whereas said notes are all now due, and, except as

hereinbefore stated, unpaid; and whereas the said Samuel Rich is legally liable to pay the whole amount due on said notes, and is unable to pay the same or any part thereof; and whereas the said the Carbonate Bank of Leadville, Colorado, threatens to commence suit by attachment against the said Samuel Rich on the note first hereinbefore mentioned, and to attach the property hereinafter mentioned of the said Samuel Rich; and whereas the said A. Hirsch and David May have assumed the payment of said note and have become liable and responsible therefor to said bank; and whereas the said David May and A. Hirsch are legally liable and responsible for the amount due on the residue of said notes, each for a certain portion thereof, and have agreed to take up and pay the same: Now, therefore, in consideration of the premises, and in consideration of the sum of one dollar ($1.00) to the said Samuel Rich in hand paid by the said David May and A. Hirsch, the receipt whereof is hereby acknowledged, the same Samuel Rich has granted, bargained and sold and by these presents does grant, bargain and sell, unto the said David May and A. Hirsch, all that certain stock of men's, boys' and children's clothing, hats, caps and gents' furnishing goods, being and contained in that certain store-room, in the city of Leadville, county of Lake and State of Colorado, known as No. 313 Harrison Avenue, together with all and singular the show-cases, counters, shelving, chandeliers and all other property of every kind in said room pertaining to the business of the said Samuel Rich, which said stock of goods is the property of the said Samuel Rich, and now in his possession in said place: To have and to hold all and singular the said goods and chattels unto the said David May and A. Hirsch, their heirs, administrators and assigns forever."

And then after a covenant of title, it adds:

"The said David May and A. Hirsch shall take the immediate possession of all said goods and chattels and of the said room in which they are contained as aforesaid, and shall proceed to sell and dispose of the same with reasonable diligence at private or public sale, as they may deem best, and out of

the proceeds of such sale of said goods and chattels pay: 1st. The amount due on said notes, with the interest thereon, and the costs and expenses of such sale; 2d. Rendering the surplus, if any, to the said Samuel Rich, his executors, administrators or assigns: *Provided, however,* That if the said Samuel Rich shall, at any time before a sufficient quantity of said goods and chattels shall be so sold to realize a sum sufficient to pay said amount due and said expenses, pay to the said David May and A. Hirsch, or their assigns, the amount due on said notes or the balance which may be due thereon after deducting the net amount realized from such sale, then these presents shall be void and the residue of said goods remaining unsold shall be delivered to the said Samuel Rich and possession thereof restored to him.

"In witness whereof the said Samuel Rich has hereunto set his hand and seal this twenty-fourth day of March, A.D. 1887.

"(Signed)	SAM. RICH. [SEAL.]"

The grantees in this conveyance took possession of the property, and, after a very brief attempt to sell it at retail, sold it in bulk to one Joseph Shoenberg for $20,100.00. A portion of this, $2113, they were compelled to pay in satisfaction of a claim for goods wrongfully taken possession of and sold. The amount of the indebtedness of Rich to the bank, assumed by May and Hirsch, was about $18,400.00, including interest. It was admitted on the trial that this sum was owing by Rich to them. The appellee, Tenney, is a trustee for several creditors of Samuel Rich, in whose behalf he obtained judgment on April 25, 1887, for the sum of $13,665.00. Upon a hearing before the Circuit Court, this instrument was adjudged in effect an assignment for the benefit of creditors; and an accounting was ordered before a master as to the value of the property received by May and Hirsch under it, as well as the names of the various creditors of Rich, and the amounts due to them. Upon the report of the master a final decree was entered —

"That the chattel mortgage mentioned in the defendants'

answer herein, given by the said Rich to the said May &
Hirsch on March 24, 1887, is in legal effect an assignment for
the benefit of the creditors of the defendant Rich; that the
defendants May & Hirsch took the property conveyed by said
mortgage as the assignees or trustees of the said defendant
Rich, and as such assignees or trustees of the said Rich shall
account to the said creditors for the value of said property as
determined and found by the said master in chancery."

And then after an adjudication of the amounts due to the
various creditors of Rich, there followed:

"It is further ordered, adjudged and decreed that the value
of the property transferred, as aforesaid, on March 24, A.D.
1887, by the said Rich to the said May & Hirsch, and for
which the said May & Hirsch are answerable and responsible
as assignees for the benefit of the creditors of the said Rich
by virtue of the said transfer, is the sum of $31,387, which
sum of $31,387 the said defendants, May & Hirsch, are hereby
ordered to distribute and pay to the parties in interest herein
in the following proportions, to wit."

And the distribution and payment ordered are to the various
creditors in proportion to the amounts thus adjudged due
to them. From this decree, May & Hirsch appealed to this
court.

*Mr. C. S. Thomas* for appellants.

*Mr. Solicitor General* for appellee.

*Mr. D. K. Tenney* and *Mr. William E. Church* filed a brief
for appellee.

Mr. JUSTICE BREWER delivered the opinion of the court.

The principal question in this case is whether the convey-
ance from Rich to May and Hirsch was, in legal effect, a
general assignment or only a chattel mortgage. The Circuit
Court held it to be the former, following in this a series of
decisions under the statutes of Missouri, commencing with

*Martin* v. *Hausman*, 14 Fed. Rep. 160, in which Judge Krekel ruled that "A debtor in Missouri, under its legislation and adjudications thereon, may, though he be insolvent at the time, prefer one or more of his creditors by securing them; but he cannot do it by an instrument conveying the whole of his property to pay one or more creditors. Instruments of the latter class will be construed as falling within the assignment laws, and as for the benefit of all creditors, whether named in the assignment or not," and continued in *Dahlman* v. *Jacobs*, 16 Fed. Rep. 614; *Kellog* v. *Richardson*, 19 Fed. Rep. 70; *Clapp* v. *Dittman*, 21 Fed. Rep. 15; *Perry* v. *Corby*, 21 Fed. Rep. 737; *Kerbs* v. *Ewing*, 22 Fed. Rep. 693; *Freund* v. *Yaegerman*, 26 Fed. Rep. 812, and 27 Fed. Rep. 248; *State* v. *Morse*, 27 Fed. Rep. 261. Since the decision of this case by the Circuit Court, in *Chicago Union Bank* v. *Kansas City Bank*, 136 U. S. 223, the several cases in Missouri, above referred to, were reviewed and disapproved. That case, however, cannot be cited as decisive of this, for the matter of assignments is one of local law. As was said in the opinion there delivered, and with a view of distinguishing between it and *White* v. *Cotzhausen*, 129 U. S. 329, in which a seemingly different conclusion had been reached under the statutes of Illinois, "the question of the construction and effect of a statute of a State, regulating assignments for the benefit of creditors, is a question upon which the decisions of the highest court of the State, establishing a rule of property, are of controlling authority in the courts of the United States. *Brashear* v. *West*, 7 Pet. 608, 615; *Allen* v. *Massey*, 17 Wall. 351; *Lloyd* v. *Fulton*, 91 U. S. 479, 485; *Sumner* v. *Hicks*, 2 Black, 532, 534; *Jaffray* v. *McGehee*, 107 U. S. 361, 365; *Peters* v. *Bain*, 133 U. S. 670, 686; *Randolph's Executor* v. *Quidnick Co.*, 135 U. S. 457. The decision in *White* v. *Cotzhausen*, 129 U. S. 329, construing a similar statute of Illinois in accordance with the decisions of the Supreme Court of that State as understood by this court, has, therefore, no bearing upon the case at bar. The fact that similar statutes are allowed different effects in different States is immaterial. As observed by Mr. Justice Field, speaking for this court, 'The interpretation within the

jurisdiction of one State becomes a part of the law of that State, as much so as if incorporated into the body of it by the legislature. If, therefore, different interpretations are given in different States to a similar local law, that law in effect becomes by the interpretations, so far as it is a rule for our action, a different law in one State from what it is in the other.' *Christy* v. *Pridgeon,* 4 Wall. 196, 203. See also *Detroit* v. *Osborne,* 135 U. S. 492."

We must, therefore, examine the statutes and decisions of Colorado. Before doing that, it may be well, however, to consider how the instrument would be regarded at common law and independently of any local statute or decision. And, first, it does not purport to be a transfer of all the grantor's property, but only of a certain described stock of goods, together with the show-cases and store fixings used in connection with that stock. On the face, therefore, there is no general assignment, or general conveyance, but only a specific conveyance of particular property. Whether the grantor was in fact possessed of other property, and to what extent, may not be certain from the testimony. When the case was first submitted for decision the matter had not been a subject of investigation, and the court said in its opinion: "The question was not asked directly of any witness put upon the stand, either on the part of complainants or of defendants. Counsel seem to have ignored that as a question in the case." And the interlocutory order, which after argument was entered, gave to the parties "time to take further testimony before the master of this court, or any notary public, on the question as to whether the chattel mortgage mentioned in the complainant's bill covered all or substantially all of the property of Rich, at the time of the execution of said mortgage." From the testimony taken under this order it would seem probable that he had other property, though of small value, a few hundred dollars or such a matter.

Again, the form of the instrument is unquestionably that of a mortgage. It is called in the acknowledgment a chattel mortgage. The complainant, in his bill, constantly speaks of it as a mortgage. And the burden of his complaint is that it

was void because fraudulently entered into, the facts claimed to show the fraud being specifically stated. It is true, there is in the bill a claim that it be adjudged an assignment, but the language of the averments in this respect shows that the claim was only that the legal effect of an assignment should be imputed to that which was in form a chattel mortgage, for, after asserting the insolvency of Rich, it alleges —

"That it became and was necessary for him to suspend payment of his indebtedness, being insolvent, and thereupon it was his duty to have made an assignment for the equal benefit of his creditors, and so he proposed to the defendants May and Hirsch, but by reason of their persuasions and promises aforesaid he gave the chattel mortgage aforesaid instead ; that said chattel mortgage was a full and complete disposition of all the property of the said defendant Rich in view of the insolvency, which was well known to the mortgagees.

"And your orator claims and insists that the said mortgage constitutes in law an assignment for the benefit of creditors, giving preference to the claims of the mortgagees, and that the same, being preferential, is void as to your orator and all other of the creditors of Samuel Rich."

And in the order of the court, heretofore referred to, the instrument was described as "the chattel mortgage mentioned in the complainant's bill." Obviously, it was the understanding and the concession that this was in form a mortgage, and the effort was to prove that it covered all the property of Rich, in order to bring the case within the rule stated by Judge Krekel in *Martin* v. *Hausman, supra.*

Not only that, the conveyance is for the sole benefit of the grantees named in it — May and Hirsch. No other creditor is to receive any benefit therefrom. But an assignment contemplates the intervention of a trustee. "A voluntary assignment for the benefit of creditors implies a trust and contemplates the intervention of a trustee. Assignments directly to creditors, and not upon trust, are not voluntary assignments for the benefit of creditors." Burrill on Assignments, 5th ed. sec. 3. "The transfer by a creditor of all his property does not of itself make what is termed a general assignment, but it must

also be conveyed to trustees, to be held by them in trust for other creditors." Burrill on Assignments, 5th ed. sec. 122. Counsel urge that May and Hirsch were in fact trustees, the real creditor being the Carbonate Bank, because, as appears on the face of the paper, May and Hirsch had not at the time paid the bank, and had only assumed Rich's indebtedness to it. But this instrument proceeds upon the assumption that the burden of this indebtedness to the bank was transferred from Rich, the grantor, to May and Hirsch, the grantees, parties who were solvent, and whose assumption of liability was accepted by the bank, and the conveyance was to them and for their protection and benefit. Out of the proceeds of sales they were to pay these notes and interest and return the surplus to Rich. No other creditors were in terms interested in this conveyance. And, further, the defeasance clause provided for payment, not to the Carbonate Bank, but to May and Hirsch or their assigns. The conveyance was not for the benefit of the Carbonate Bank, but for that of May and Hirsch, who had assumed Rich's liabilities to that bank. Suppose, the day after this instrument had been executed, May and Hirsch had been paid by Rich the full amount due on these notes to the Carbonate Bank, can it be doubted that all rights under this conveyance would have been discharged? Could the Carbonate Bank have held May and Hirsch responsible for a breach of trust in surrendering the property under those circumstances to Rich? It is suggested by the Circuit Court, in its opinion, that there was no future day of payment named in the instrument, and that the mortgagees were to take possession and sell at once. But as the debts for the securing of which this conveyance was made were then due, the naming of a future day of payment was not to be expected, and might have suggested a suspicion as to the *bona fides* of the transaction, and the duty of immediate sale cast by this instrument upon the grantees was the duty cast upon chattel mortgagees. Within accepted definitions and settled rules of construction, this instrument was in form, at least, that which the parties, the counsel, and the court called it, a chattel mortgage.

Is there anything in the statutes or decisions of Colorado

which transforms the character or denies validity to such an instrument, securing and intended to secure only one of many creditors? In 1881, there was passed by the legislature of Colorado (Laws 1881, p. 35,) an act to regulate assignments for the benefit of creditors. It consisted of but a single section, which provided that, " Whenever any person or corporation shall hereafter make an assignment of his or its estate for the benefit of creditors," the assignee should be required to pay certain specified debts in full; and then followed this clause : " All the residue of the proceeds of such estate shall be distributed ratably among all other creditors, and any preference of one creditor over another, except as above allowed, shall be entirely null and void, anything in the deed of assignment to the contrary notwithstanding." A case under that statute came before the Supreme Court, *Campbell* v. *Colorado Coal &c. Co.*, 9 Colorado, 60, 64, and it was held that the word " estate " meant all the debtor's property, and hence that the statute was designed to cover general assignments; and in the opinion pronounced by Mr. Justice Helm it was said :

" A fundamental principle underlying this subject is that, so long as the debtor retains dominion over his property, in the absence of statute and of fraud, he may do with it as he pleases. He may transfer the whole of his estate in payment or in security of a single *bona fide* debt. He may assign, mortgage, or otherwise encumber his estate, or a part thereof, in favor of some of his creditors, excluding the rest; or he may make an assignment for the benefit of all his creditors, and therein give preferences to a selected few. It is only when, either by a general assignment or otherwise, the debtor has parted with the dominion over his property, that, in the absence of statute or fraud, the foregoing privilege is forfeited. : . . To hold that debtors may not give preferences among their *bona fide* creditors, so long as they control their property, would greatly embarrass the transaction of nearly all kinds of business. Some of the authorities go so far as to say that such a rule would prevent the carrying on of business altogether."

The statute of 1881 was superseded by that of 1885, which

was that in force at the time of these transactions. This statute may be found in the Laws of 1885, p. 43, and in the first volume of Mills' Annotated Statutes, p. 453. The only portions of that statute having any bearing on the matters here in controversy are sections 1 and 3 and the last half of section 18, which are as follows:

"Any person may make a general assignment of all his property, for the benefit of his creditors, by deed, duly acknowledged, which, when filed for record in the office of the clerk and recorder of the county where the assignor resides, or, if a non-resident, where his principal place of business is, in this State, shall vest in the assignee the title to all the property, real and personal, of the assignor, in trust, for the use and benefit of such creditors."

"No such deed of general assignment of property by an insolvent, or in contemplation of insolvency for the benefit of creditors, shall be valid, unless by its terms it be made for the benefit of all his creditors, in proportion to the amount of their respective claims."

". . . . But nothing in this act contained shall invalidate any conveyance or mortgage of property, real or personal, by the debtor before the assignment, made in good faith, for a valid and valuable consideration."

This statute, so far as we are advised, has not been before the Supreme Court of Colorado for construction; at least, not for any question involved in this case. The first section, it will be perceived, gives permission to make a general assignment. There is no compulsion. There is neither in terms nor by implication any duty cast upon an insolvent to dispose of his property by a general assignment, or anything which prevents him from paying or securing one creditor in preference to others. On the contrary, the last half of section 18 plainly recognizes the right of a debtor to prefer by payment or security; and, in the light of this statute, the quotation which we have made from the Supreme Court of Colorado becomes pertinent, which clearly affirms the right of a debtor to do with his property as he pleases, except as in terms restrained by statute; and a statute which simply permits a debtor to

make a certain disposition of his property works no destruc-
tion of his otherwise unrestrained dominion over it:

And, further, when we look at section 3 we find that when
a conveyance is made which is a general assignment, it is void
unless by its terms it is made for the benefit of all creditors.
The rule thus declared is not that the preferences fail and the
assignment stands, but that the assignment itself fails unless
it be in terms free from preferences.  So, if this conveyance
were in form unquestionably a general assignment, as it con-
templated the payment only of May and Hirsch, it was not
only not for the benefit of all creditors, but avowedly for the
benefit of these two, and it would, therefore, have to be ad-
judged a void instrument, and could not be upheld under that
rule which prevails in some jurisdictions of, in such cases, up-
holding the conveyance and avoiding the preferences.  So it
follows that either this is a chattel mortgage given as security
to two creditors for their debts, a transaction in no manner
forbidden by the statutes of Colorado, or, if it be a general
assignment, then it was an assignment with preferences, which
preferences by those statutes, avoid the conveyance.  We
think, therefore, the Circuit Court erred in the conclusions
which it reached, so far at least as this aspect of the case is
concerned.

As we have heretofore noticed, the burden of the complaint
was that this conveyance was fraudulent and void because, as
alleged, made in pursuance of a conspiracy between Rich, May,
and Hirsch ; a conspiracy by which Rich was to go east and
buy goods, and, when those goods had been purchased and
brought to Leadville, transfer them to May and Hirsch.  So
far as this charge is concerned, we agree with the Circuit
Court that it is not established by the testimony.  Rich
evidently would like to convey that idea, and yet he does
not directly testify to it ; and May and Hirsch clearly deny
it.  Obviously there was no conspiracy between the parties,
and all talk between them was only to the effect that, if Rich
should succeed in buying what he talked of buying, May and
Hirsch would help him to carry the burden.  He largely failed
in that; and they, when he became pressed by the bank,

simply took measures for their own protection. .It being conceded, as it is, that the debts from Rich to May and Hirsch were *bona fide,* the transaction amounted to this, and this only: that the debtor used his property to prefer certain *bona fide* creditors. This, the laws of Colorado allowed, and therefore it cannot be avoided at the instance of the unpreferred creditors.

> *The decree of the Circuit Court is reversed, and the case remanded, with instructions to dismiss the bill.*