## POLLOCK & BERNHEIMER ET AL. *v.* C. R. SYKES, RECEIVER, ET AL.

1. GENERAL ASSIGNMENT. *Deed of trust. Several instruments. Intent.*

   Whether a deed of trust to secure a creditor shall be treated as part of a general assignment, made shortly afterwards by the debtor, is to be determined by the intent and purpose of the grantor in executing the former; time, in such case, being of evidential value only.

2. SAME.

   Where a merchant, determined to execute a deed of trust to secure certain creditors, consulted a lawyer for the purpose of so doing, and, being advised by the lawyer that it would necessitate an assignment, nevertheless executed the deed of trust, and shortly afterwards, on same day, made a general assignment, the two deeds are not to be construed as parts of the same transaction, and the deed of trust is not void.

3. SAME. *Tendency of authorities.*

   The tendency of recent well-considered authorities, is to recognize the view that preferences were allowed at common law, and that the principles of an insolvent or bankrupt law are not applicable to the making of general assignments.

4. SAME. *Code* 1892, *ch.* 8.

   In case of a general assignment, administered under code 1892, ch. 8, in which the trustee and beneficiaries in a deed of trust are made parties to the suit—the assignment covering the equity of redemption in the property conveyed by the deed of trust—the distinct natures of the trusts are not affected by the fact that the parties to the deed of trust united with the assignee and receiver in a petition to have the receivership extended over the entire property.

5. SAME. *Personal decrees.*

   In case of a general assignment, administered under code 1892, ch. 8, creditors who file cross petitions, and establish their debts, are entitled to personal decree against the assignor, even if they fail in the attacks upon the validity of the assignment.

From the chancery court of Monroe county.

Hon. Baxter McFarland, Chancellor.

E. Lancitot, an insolvent merchant, conveyed all of his property on the same day by two instruments, the one first actually executed being a deed of trust to secure certain creditors, and the second a general assignment, executed about twenty minutes afterwards, and the general assignment covered the equity of redemption to the property in the deed of trust. The assignee in the assignment filed his petition and bond in the chancery court under code 1892, ch. 8, and a number of creditors filed cross petitions attacking the validity of both conveyances, claiming that they should be construed as evidencing a common purpose and should be treated as if the two were one instrument, and that they were violative of the statute, code 1892, ch. 8, regulating general assignments, and, further, that the debts secured by the deed of trust were usurious. Hurst & Co., creditors, sought by their cross petition to recover, specifically, the goods sold by them to Lancitot.

In the course of the administration by the assignee and receiver he filed a petition asking the court, the trustee and beneficiaries in the deed of trust uniting with him, to extend the receivership over the property conveyed by the deed of trust, but subject to it, in order that the interest of all parties might be promoted by administering the two trusts in one suit, but also asking that in all things he keep separate accounts, etc. No objection to this petition was made by the attaching creditors, and the court granted the prayer of the petition.

*Gilleylen & Leftwich, Houston & Reynolds,* and *Houston & Barron,* for appellants.

The record presents this question squarely to this court, whether chapter 8 of the code of 1892 can be furtively evaded by a debtor, powerless in the hands of a bank and its officers, which has been furnishing him money at a usurious rate of in-

terest, so as to get the benefits of the statute and escape its burdens.

Lancitot, confessedly insolvent (and the answers admit C. R. Sykes and the beneficiaries in the deed of trust knew it), voluntarily offers the First National Bank to secure its indebtedness. He goes to the attorneys of the bank and discusses the preparation of a deed of trust. Before the deed of trust is begun to be prepared, he is blandly told that giving the deed of trust will stop his business. The preparation of the general assignment, by these same attorneys and another, then begins, and it and the deed of trust go hand in hand, *pari passu*, until they culminate in the execution of both at one sitting of the officer who takes the acknowledgments. Both instruments are carried to the chancery clerk's office and filed within a few minutes of each other. We assert, with some confidence, two propositions as touching the validity of the deed of assignment which the learned chancellor sustained: (1) It is void on its face, in that the deed of assignment is a mere auxiliary of the deed of trust and contemporaneously executed; (2) evidence *aliunde* shows that the deed of trust and the assignment together were a preferential disposition of the entire estate of the debtor in the interest of the debts secured by the deed of trust, and that the whole is a palpable evasion of the assignment chapter of the code of 1892; so much so that the courts will not execute it; in other words, the whole constitutes together an attempted assignment which is invalid.

The first proposition is best proven by a confession placed of record by the assignee and trustee, in the deed of trust, themselves. The deed of trust is purely voluntary. There is no extension of the law day for the payment of the notes accrued. There is no consideration. These excellent lawyers, while avoiding Scylla wanted to escape Charybdis. James A Roy, a solvent indorser, had placed his name on the back of these notes secured in the deed of trust, and an extension would release him. That city of refuge was not given up, so that the deed

of trust is but voluntary.  *Dunlap* v. *Burnett*, 5 Smed. & M.,
702; *Perkins* v. *Swank*, 43 Miss., 349; *Pope* v. *Pope*, 40 Miss.,
516; *Schumpert* v. *Dillard*, 55 Miss., 348; 15 Am. & Eng.
Enc. L., 757.

The assignment is fraudulent on its face, in so far as it re-
quires the assignee to preserve and hold the goods for fifteen
days, until the law day of the deed of trust arrives.  The deed
itself thus palpably hinders and delays creditors in the collec-
tion of their debts.  The assignee stands over the goods, keep-
ing the general creditors off, until the time when the trustee
can come in and take possession.  He is a lion in the path of
creditors.  They cannot attach, they cannot replevy, they can-
not levy an execution during that time.  But the appellee re-
sponds to this attack: " Fifteen days is a very short time, and
does no harm to creditors."  It does not lie in his mouth to
say this.  It is the principle of the thing that confronts the
court.

This transaction is not like the case of *Sells* v. *Grocery Co.*,
72 Miss., 590–605, where the assignment was not at first con-
templated.  The evidence was uncontradicted in that case that,
at the time of the execution of the bill of sale and the deed of
trust, there was no contemplation of making an assignment.
The assignment was first thought of on December 2, 1892, the
day on which it was executed, the bill of sale and the deed of
trust having been executed on November 30, 1892.  Nor is
this transaction like *Mayer* v. *McRae*, 16 S. Rep., p. 875,
where the instrument was executed in payment, etc.  In this
case the deed of trust and the deed of assignment were comple-
mentary one of the other.  Both were conceived before either
was born.  They were executed one in support and aid of the
other.  Both were discussed before either was begun.

The proper construction of code of 1892, ch. 8, we contend, is
that a general assignment must be administered by the chancery
court.  The assignee cannot be made a stakeholder for the
trustee for fifteen days, and do nothing in the meantime.

When the assignor attempts this, as in this case, we think the instrument is invalid on its face. This feature of chapter eight can be no more evaded than the statutes against preferences can be avoided in those states where preferences are invalid. The reasoning of the courts on such statutes, we think, are potent in this case, *mutatis mutandis.* Burrill on Assignments, secs. 93 and 324 *et seq.; Perry* v. *Holden,* 22 Pick. (Mass.), 269 *et seq.; Fairbanks* v. *Haynes,* 23 Pick. (Mass.), 323 and 325; *Perry* v. *Cutts,* 42 Me., 453; *Pope* v. *Pope,* 40 Miss., 516; *Dano* v. *Brewer,* 69 Ala., 191; *Krew* v. *Prindle,* 8 Oreg., 158; *French* v. *Towries,* 10 Gratt. (Va.), 513; *Meissey* v. *Mayer,* 26 Va., 471; *Van Patton* v. *Marks,* 52 Iowa, 518.

These various instruments are construed as parts of the common design of the debtor, who abandons his entire estate to pay debts, and attempts preferences by indirection. Here the evasion of the law is just as palpable, through the manifest purpose of the assignor to abandon his estate to his creditors through the medium of chapter 8, code 1892, and the chancery court; and at the same time he refuses to allow that court to fully administer the estate, and take entire dominion over it. We invite the court's attention, first, to that line of cases which construes several instruments together as constituting a general assignment, none of which are such standing alone. *White* v. *Cotshausen,* 129 U. S., 329; *Winner* v. *Hoyt,* 28 N. W. Rep., 380; *Lorrabee* v. *Franklin Bank,* 21 S. W. Rep., 747; 29 Cent. Law Jour., 243; *Putney* v. *Freeselben,* 11 S. E. Rep., 337; *Burnham* v. *Hoskins,* 44 N. W. Rep., 341; 2 Supreme Court Rep., 367,

These cases go further than is necessary in the case at bar. for here there is a general assignment. There is a second class of cases where there is an assignment without preferences on its face, in states where preferences are prohibited, and, contemporaneously with it, other conveyances making preferences, all of which are construed as one instrument. *Preston* v. *Spalding,* 10 N. E. Rep., 903; *Farwell* v. *Nillson,* 24 N. E. Rep., 74; *Perry* v. *Cutts,* 42 Me., 445; *Hall* v. *Bancroft,* 30 Ala.,

193; *Kellogg* v. *Root*, 23 Fed. Rep., 525; *Van Patton* v. *Burr*, 3 N. W. Rep., 524; *Field* v. *Geohegon*, 16 N. E. Rep., 912; *Burnham* v. *Haskins*, 44 N. W. Rep., 341; 34 N. J. Eq., 478; 12 N. W. Rep., 550.

*Clifton & Eckford*, on same side.

Does the mortgage and assignment constitute one instrument? E. Lancitot was insolvent and was being pressed by his largest creditor, the bank. He decided to give the bank and a few other creditors a deed of trust on his stock of goods, which constituted almost his entire estate. When he notified his lawyers to prepare the mortgage, who were also the retained counsel of the bank, they told him it would force him out of business, and advised him to make, also, a general assignment. He then decided to make, also, a general assignment, and the two deeds were prepared at the same time by the lawyers, Sykes & Bristow, and both completed before either was executed. The mortgage was executed seven minutes before the assignment, and recorded twenty minutes before the assignment. No extension of time was given on the debts by the bank, but the mortgage matured fifteen days after date, and provided that E. Lancitot should retain possession until the law day, but could not sell any of the goods. The assignment gave C. R. Sykes, the assignee, immediate possession of the goods, referred to the mortgage as a superior lien, and directed that the assignee and receiver should turn over all these goods to the trustee in the mortgage, on the law day of the deed, to pay off the debts.

1. Where an insolvent debtor decides to make a general assignment, and, pursuant to such determination, commences the preparation of the conveyance, having previously determined to secure certain of his creditors by mortgage on a portion of his property, and both the assignment and mortgage are prepared at the same time, and executed at one and the same time, having for their object one common purpose, they constitute one transaction, and are one and the same instrument. Most

of the states, unlike Mississippi, have statutes prohibiting pref-
erences in general assignments.    And while under such statutes
it is always fatal to preferences to construe both deeds as one,
yet these decisions, under such statutes, throw much light on
the question whether these two deeds constitute one transaction
or one conveyance.    The following cases support and supply
the rule as announced above in determining this question: *Sel-
leck & Bush* v. *Pollock*, 69 Miss., 870; *Hardware* v. *Imple-
ment Co.*, 28 P. R. (Kan.), 171; *Jones* v. *Kellog*, 33 P. R.,
997; *Larrabee* v. *Franklin Bank*, 21 S. W. Rep., 747; *Falkner*
v. *Lineham*, 55 N. W. Rep., 504; *Bank* v. *Sands*, 28 P. R.,
618–620; *Schillate* v. *McConnel*, 26 N. E. Rep., 833, 834;
*Peed* v. *Elliot*, 84 N. E. Rep., 319.

2. The following authorities construe the several instru-
ments as one, whenever the insolvent debtor decides to make a
general assignment, and subsequently attempts to create prefer-
ences by mortgage or other separate conveyance.    *Preston* v.
*Spaulding*, 10 N. E. R. (Ind.), 903; *Field* v. *Geohegan*, 16
N. E. R. (Ind.), 914; *Armstrong* v. *Holland*, 17 So. R. (Fla.),
366; *Fletcher & Co.* v. *McMaster*, 49 N. W. R. (Iowa), 1037;
*Rochester* v. *Armour*, 8 So. R. (Ala.), 780; *Borgen* v. *Varrel-
man*, 27 N. E. R. (N. Y.), 1065; *Burnham* v. *Haskins*, 44
N. W. R. (Mich.), 551.

3. Another line of cases goes still further, and construes the
several instruments as one when the insolvent debtor decides to
part with all his property through conveyances other than
general assignment, and creating preferences.    *White* v. *Cotz-
hausen*, 129 U. S., 329; *Winner* v. *Hoyt*, 28 N. W. R., 380–
383.    We think the true and safe rule will be found in the
first line of authorities.

This deed of assignment violates our statute, which is man-
datory, by taking the property out of the chancery court and
turning it over to a stranger and trustee in the mortgage.
The cases which held the transaction to be one when the mort-
gage is executed after the insolvent debtor has commenced the

preparation of the assignment, do not base their construction on the fact that it violates the statute against preferences, but because of the determination to part with all his property, followed up by commencing the preparation of the assignment; that after the insolvent debtor has decided to make an assignment, and commences it, other conveyances made subsequent or simultaneously will be a part of it.

This scheme is one that chapter 8 of the code of 1892 inhibits. Under this statute the estate is to be administered by the chancery court. The assignment provides that the receiver shall turn over to the trustees in the mortgage the great bulk of the property, lifts it bodily out of the chancery court, and directs that it shall be turned over to a stranger, thereby setting at naught the jurisdiction of the court. This could not be done through any legal process known to the law, much less by the insolvent debtor. *Jeffrey* v. *McGehee*, 2 Sup. Ct. R., 367. *Bank* v. *Gilmer*, 22 S. E. R., 5. This direction in the assignment to recognize the trustee's right of possession, not only makes the mortgage a part of the assignment, but was a bold plan to enforce and aid the preference. *Backhaus* v. *Sleeper*, 27 N. W. R., 413; *Perry* v. *Helden*, 22 Pick., 269. *Haustenia* v. *Martin*, 1 Metc., 294. It is not an assignment of the equity of redemption, as contended for by counsel for appellees; for the scheme to make a general assignment had been determined on before the deed of trust was executed or even drafted.

*Sykes & Bristow*, for appellees.

In states where preferences in assignments are prohibited by law, an insolvent debtor, of course, would not be allowed to "whip the devil around the stump," and accomplish a desired preference by simultaneous deeds—one by way of mortgage, securing one debtor before all others, and the other assigning all his other property for his creditors generally. And these are the states where courts have so decided, being the authori-

ties cited by counsel below. In Mississippi, the debtor has practically an absolute dominion over his property. _Swiget_ v. _Boyd_, 57 Miss.; _Eldridge_ v. _Simpson_, 58 Miss. In the absence of superior rights of others, by way of lien, etc., a debtor may convey either absolutely or conditionally, by way of mortgage, all his assets to one creditor to the exclusion of all others; or he may secure one fully, by way of mortgage, etc., and assign a remnant to all the others; or confess judgment, etc. All this necessarily results from that dominion which the law of Mississippi gives every man over his own property. _Estes_ v. _Gunter_, 122 U. S., 450, decided on appeal from Mississippi, involving the construction of Mississippi laws, and reversing Judge Hill in an assigment case, a case cited with approval by this court only a short time ago, is exactly like the case at bar in every respect. _Sells_ v. _Grocery Co._, 72 Miss., 590; _Mayer_ v. _McRae_, 16 So. Rep., 875; _Bamberger_ v. _Schoolfield_, 160 U. S., 149.

Of course, a trust deed made contemporaneously with and in support of the preferences in an assignment would be simply a part of the assignment, and would partake of its invalidity. _Selleck_ v. _Pollock_, 69 Miss., 870. But there is no such state of things in the case at bar. Here we have the simple everyday occurence of a debtor giving a trust deed to one creditor, on certain specific property, to secure him; and then, desiring to make some disposition of all his other property, on advice of his counsel, he assigns all that to an assignee for the benefit of all his other creditors. Surely, no one will deny that Lancitot had the right to give the trust deed on the stock of goods. Well, did that act deprive him of his absolute dominion over his other property; and was he thus compelled to abandon that altogether?

_George C. Paine_, on same side.

Lancitot's execution of the deed of trust and the assignment, if free from fraud, will not be avoided because of the fact that they were executed about the same time. He had the right to

execute these instruments at the time of their respective execu-
tions, and to embrace in them the conditions he did.　72 Miss.,
590, and authorities referred to in the opinion of the court.
The undisputed testimony is that these two instruments were
not executed in support of each other, but were separate and
distinct instruments.　The great array of authorities presented
by counsel for appellants from other states, to the effect that
the deed of trust and assignment constitute but one instrument,
are valueless in this state, because our authorities hold the con-
trary doctrine, and the reason the other states hold a different
rule is because in those states preferences are not allowed.

This court settled this matter in the case of *Sells* v. *Grocery
Co.*, 72 Miss., 606, in which the court says all these matters
must be governed by the statutes, jurisprudence and policy of
the states where the act is done.　So, in the case at bar, it must
be construed under our statutes, jurisprudence and policy.

Argued orally by *W. H. Clifton*, for appellants.

WHITFIELD, J., delivered the opinion of the court.

The one thing raised into prominent relief by the record,
standing out clear and distinct as a mountain in the landscape,
is the purpose of Lancitot to secure payment to the creditors
named in the trust instrument.　It was about that he was exer-
cised.　That had been, for some days prior to the execution of
either instrument, fully and finally determined upon by him.
They had furnished the money upon which he had operated,
had been his friends in need, and, naturally, he desired to, and
determined to, protect them by preference.　And, so far as
any fully formed purpose as to the disposition of any of his
property was concerned, that purpose was the only one origi-
nating with him, as determined upon by him up to the time of
the conversations with his attorneys.　True, he told Bowen
some two days before the instruments were executed, that if he
made an assignment, he would be protected; but this shows only

a floating, shadowy thought as to what he might do as to an assignment, and negatives clearly any existence in his mind, then, of a definite determination to do so. But he also told Bowen, in that very conversation, that he had fixed the bank matter. One purpose was fully formed and settled. As to the assignment he had no purpose. The possibility merely that he might do so, had occurred vaguely to him. When his attorneys suggested to him that the execution of the trust deed would necessarily close his business, he, then, for the first time, determined to make the assignment. The trust deed was, in pursuance of his original purpose, executed some thirty minutes before the assignment, though both may have been prepared for execution coetaneously. But the fact that he, at the suggestion of his attorneys, then formed the purpose to execute an assignment, cannot, in reason or principle, affect the other purpose, prior in existence as to time, and different in nature, to execute the trust deed. Both may have been conceived before either was born, but indisputably one was conceived before the other, and one was born before the other, and the twins were as unlike, in essential nature, as Esau and Jacob. The instruments manifest wholly distinct purposes, and the purposes were fully formed and determined upon, in the mind of the grantor, at different times, originated from wholly different motives and considerations, and were not supplementary the one of the other, but have distinct and separate purposes, appropriately manifested by instruments separate and distinct in their nature. The test, in all these cases, must be what was the thought, intent and purpose in the mind of the grantor.

Time is of evidential value only, greater or less according to the particular circumstances of each case, not determinative. *Peed* v. *Elliott*, 34 N. E. R., 320; *Shillito* v. *McConnell*, 26 N. E. R., 832. When the time between the execution of the instruments is very short, the inference of identity of transaction, oneness of purpose in making both, is, of course, stronger. But it is true, also, that where attention is directed too exclu-

sively to mere nearness of time, there is danger of unreasona-
bly straining that inference.    To hold with the supreme court
of Illinois (*Preston* v. *Spaulding*, 120 Ill., 208) that, where
the mere mental determination has been first reached to make
a general assignment, to dispose of all, whatever instruments
may be subsequently executed must all be referred to that
mental determination, will not help appellants, for no such de-
termination to make a general assignment was first and orig-
inally formed by Lancitot.    Or to hold with the supreme
court of Indiana (*Shillito* v. *McConnell*, 26 N. E. R., 835)
that the Illinois test is unsound, because human tribunals have
no practical means of ascertaining just when such mental de-
termination was formed, and hence, that the proof must show,
in addition to the fact that the mental determination to make
a general assignment was first formed, some act—such as the
execution or commencement to execute such general assign-
ment—also furnishes appellants no aid; for again it is to be
said, that here no such purpose, first and originally, to make
the assignment, existed. See, emphatically upholding this view,
*Shillito* v. *McConnell*, 26 N. E. R., 832.    The holding of both
these courts, properly understood, is merely that when the
determination to make the assignment is first and originally
formed, the determination subsequently formed to also make
instruments containing preferences, both being thus executed,
makes void all the instruments—thus parts clearly of a com-
mon scheme, and that scheme one to evade the statute against
preferences in a general assignment.    But he who first deter-
mines to make only a special provision for particular creditors
by a trust deed on part only of his property, not then intend-
ing to make a general assignment, may never either form the
purpose of making such assignment, or in fact make it.
There was, in such case, in his mind no common scheme to dis-
pose of all, with the trust deed as part of such scheme.    And if
afterwards, he—the special provision having been previously
fully determined upon—from new considerations suggested to

him, does so subsequently determine to make such assignment, and does make it, such purpose is clearly not one with the first, but a wholly separate and independent purpose, and when, as here, that first purpose of his, is first completely executed, the special provision is, on this ground, unassailable.

It involves a plain fallacy to argue that whatever Lancitot's first purpose may have been, when his attorneys suggested to him the then necessity of an assignment, he then changed that first purpose, and formed the one new purpose of making both instruments; for the first purpose was not changed, the trust deed being executed in pursuance of the original unchanged purpose, and the assignment was the product of a wholly distinct purpose then first formed.

What was done as to extending the receivership over both trust estates could not alter the essentially distinct natures of the trusts. That was mere administration of two separate trusts, specially prayed to be separately treated. This is so decided, in principle, in *Field* v. *Geohegan*, 16 N. E. Rep., 912. Much stress is placed on *White* v. *Cotzhausen*, 129 U. S., 329, by learned counsel for appellants. But, as clearly pointed out in the masterly opinion of Kellam, J., in *Sandwich Mfg. Co.* v. *Max*, 24 Lawyers' Rep. Annotated, 529, the supreme court of the United States professed in that case only to enforce the law of Illinois as it supposed it to have been announced in *Preston* v. *Spaulding, supra.* And it misconceived that case, as is shown in the case of *Union Bank of Chicago* v. *Kansas City Bank*, 136 U. S., 223; and in this case it is also shown that some of the circuit judges of the United States had similarly misconceived the decisions of the supreme court of Missouri. See, also, *May* v. *Tenny*, 148 U. S., 60.

The case of *Sandwich Mfg. Co.* v. *Max, supra,* is remarkable for the vigor and ability with which it emphasizes the doctrine that in those states where preferences are prohibited in general assignments, the prohibition is not of preferences *per se* but of preferences in such instruments, and of the right of

an insolvent debtor in such states to prefer otherwise, and of the justness of the right of preference.     *Selleck* v. *Pollock*, 69 Miss.

There is observable in the earlier holdings on this subject in states where preferences in general assignments are prohibited, a tendency to construe as one general assignment, in fraud of such statutes, an assignment and any other disposition of property—such as mortgage, trust deed, confession of judgment, etc.—or any such instrument whereby all is disposed of preferentially, or any two or more such instruments.    But many recent and well-considered cases point out the fact that preferences were allowed at common law; are now, by statute, in those states expressly allowed to be made, except in general assignments; that the principles of an insolvent or bankrupt law must not be confounded with those to be applied to the making of general assignments; that a single mortgage or trust deed disposing of all is not necessarily a general assignment, within the meaning of these statutes against preferences in general assignments (*Kohn Bros.* v. *Clement, Morton & Co.*, 12 N. W. Rep., 550), and mark out clearly the distinction between an assignment and a mortgage or trust deed, showing that an assignor intends to divest himself not only of the title to his property, but the control; that an assignment is "made in view of insolvency—that it is the initiation of proceedings for the absolute disposition of the property and distribution of the proceeds;" but that the purpose of a mortgage or trust deed, if it is what it purports to be, is quite different.    And hence many cases, in such states, now hold that where there is no assignment, but a mortgage or mortgages, or trust deed or trust deeds made, conveying all, to secure *bona fide* debts, they are not the kind of general assignments meant by these statutes, and that though that is a general assignment, yet if a trust deed or mortgage precede it, in purpose or execution, by never so short a time, the two are not one general assignment, as held in *Shillito* v. *McConnell, supra.*    See, in addition, illustrating these propositions, *Kuhn Bros.* v. *Clement, Morton*

*& Co.*, 12 N. W. Rep., 550; *Sandwich Mfg. Co.* v. *Max*, *supra; Cutler* v. *Pollock*, 25 Law. Rep. Anno., 377, at p. 380 specially; *Farwell* v. *Nilsson et al.*, 24 N. E. Rep., 74; *Leets-Fletcher Co.* v. *McMaster*, 49 N. W. Rep., 1035. *Estes* v. *Gunter*, 122 U. S., 450, is in direct support of the views advanced in this opinion.

Of course, where the purpose first formed is to make a general assignment, and, as part of that purpose, to prefer usurious debts by separate instruments, and both were executed in pursuance of such purpose, both are parts of a common scheme in fraud of our chapter 8 of the annotated code, and where usury exists in either, both will be held to constitute a general assignment, and will fall at the attack of one entitled to set up the usury.

Many other grounds of assault upon the assignment are set up by cross petitioners. We cannot notice them seriatim. As to the John E. Hurst & Co. claim, the testimony is insufficient to sustain a rescission for fraudulent representations; and the cross petition of Schloss Bros. and Dunham, Buckley & Co. contains no allegation whatever as to any false and fraudulent representations of Lancitot's financial condition. An amendment for this purpose seems to have been obtained at the hands of the court, but the record fails anywhere to show that the amendment was ever made in this cross petition. The testimony on this subject, under this petition, was therefore properly excluded.

There are other assignments of error, all of which have been carefully considered, but a special notice of which would too much protract this opinion. It is enough to say that we concur, as to all of them save one, throughout, with the learned chancellor—one of the ablest and most accomplished judges who ever adorned the bench in Mississippi. That one relates merely to the failure to enter personal decrees for the cross petitioners, the amounts due all of whom were agreed upon, and some of whom specifically asked personal decrees, and others

for general relief. The omission to enter these decrees was an inadvertence, manifestly.

*The decree is affirmed in all things else, but as to this is reversed, and decrees will be entered here for the amounts agreed on.*