## WELLINGTON v. SEDGWICK.

To constitute an assignment within the insolvent law, there must be a trust in favor of the assignor or third person.

If A sells his property to B, in consideration of so much money to be paid by B to C, though the money is to be paid by or out of a sale of the goods, the contract is not void. There is no difference in such a case between paying to A, and paying to A's order or creditor.

Where the vendee of goods is to pay part of the purchase money to the creditors of his vendor, this creates no trust in the goods sold in favor of such creditors; therefore, in an action to recover such goods, the following instruction to the jury is improper : " If the jury believe from the testimony, that the agreement between Stevens & Markley, the vendors of the plaintiff, was that the plaintiff was to pay certain of the debts of his vendors *out of* said goods, then that such sale as against the other creditors of the vendors, is fraudulent."

Where a Sheriff, having an execution against S. & M., levied it upon certain goods, the property of S. & M., and placed them in the hands of W. as keeper, and subsequently the execution was quashed, and between that time and the issue and levy of a new execution, W., who still remained in possession of the goods, purchased the goods of S. & M.: *Held,* That such purchase is valid, and vested the property in W.

Upon the levy of the execution, the property vested in the Sheriff for certain purposes; his title was only a qualified title, which was defeated by the quashing of the execution; the title then returned to S. &. M.; they could discharge the Sheriff from the duty of returning the property to them, which they did by the sale to W. The possession was changed by the levy of the first execution, by the

Sheriff, and his taking and keeping the goods ; so that the subsequent sale by the defendants in execution to W., was not void by force of the statute requiring possession to accompany and follow sale.

Where, at the time of the levy of the second execution, the goods first levied upon were mixed with others which W. had also bought of S. & M., which last goods were alleged to be liable to the execution : *Held,* That if they were so mixed or confounded with other goods, as that they could not be identified or distinguished, and W. failed to point out to the Sheriff, or designate the goods which were not subject to execution, the Sheriff could not be liable for levying on the whole. But the Sheriff would be bound, after the levy, on notice to him of the goods not liable, to restore them ; but this notice must be specific, apprising him of, and designating, the particular goods improperly seized, and must be given previously to suit brought.

Such a question is one of fraudulent intent, to be left to the jury upon the facts, and is not one of those cases which the *Court* is authorized to pronounce to be fraudulent as matters of law.

APPEAL from the Fifth District, County of Tuolumne.

The facts sufficiently appear in the opinion of the Court.

*H. P. Barber* for Appellant.

There are two fatal errors in the charge of the Court.

I. This was an action of replevin brought against defendant by the vendee of certain goods and chattels, the sale being alleged fraudulent. It was proven, that after the transfer the vendee had taken possession of the premises, and had purchased goods in his own name and on his own account, in San Francisco, to the amount of $5,000, which were levied on by the defendant, under an execution against the vendors of plaintiff, and in regard to which plaintiff contended that the execution could afford no possible justification, inasmuch as those goods were undoubtedly the property of plaintiff, and the execution was against one Markley. The Court charged :

" That if plaintiff did not notify and point out to the Sheriff, at the time of levy, such goods, then they were the same as any other portion of the goods sold by Markley to Wellington, the plaintiff, and plaintiff could not recover for them."

Now, in the *first* place, the Sheriff was directed by the execution to levy on the goods of Markley, and if he levied on the goods of Wellington, he did it at his peril, and must take the risk.

*Secondly.* It was immaterial whether a demand were made at the time of levy, or at any other time before suit brought.

*Thirdly.* The Court entirely usurped the province of the jury, in stating that such goods " were the same as any other portion of the goods sold by Markley to Wellington, and plaintiff could not recover for them."

"A peremptory direction to the jury to find in a given way, is a clear usurpation on the part of the Court, depriving them of all power and discretion. It is, in effect, deciding the issue, and finding the verdict for them." 3 Graham & W. on New Tr., p. 738 *et seq.*; 11 Wendell, 83 ; 19 Wendell, 402.

The reason applicable to such a case is very lucidly laid down in N. Y. Fire Ins. Co. *v.* Walden, 12 Johns. R. 512. See, also, Daumiel *v.* Gorham, 6 Cal. R. 43.

II. The Court also charged, " That if the jury believed from the evidence that the agreement between Stevens & Markley, the vendors of the plaintiff, was, that the plaintiff was to pay certain of the debts of his vendors out of said goods, then that such sale, as against the other creditors of the vendors, is fraudulent."

Here is a charge, if possible, more erroneous than the other :

*First.* This charge does not include plaintiff at all, but instructs the jury, that if his vendors agreed, etc. His vendors might well have so agreed, without any agreement or even knowledge on his part. We apprehend their agreement could not affect his rights.

*Secondly.* The charge was erroneous in point of law ; it was a direct charge to the jury, that if a debtor prefer one creditor to another, the transaction is fraudulent—a doctrine opposed to all authority, and specially denied in a late case decided by this Court—Dana *v.* Stanford, 10 Cal. R. 269—where the Court says that it is no part of the policy of the law to inhibit the application of property " to the payment of one debt rather than another."

It was charged as absolutely fraudulent of itself; or, in other words, was a positive direction to the jury to find for defendant because the sale was fraudulent.

Even had such a sale been evidence of fraud in law, the charge would have been altogether too broad. Williams *v.* Cheesebrough, 4 Conn. R. 356.

Our statute contains but one conclusive evidence of fraud *per se*—the possession of the vendor after sale. All other circumstances must be left to the jury as evidences of fraud, but not as rendering a sale fraudulent *per se*.

Where the charge of the Court has a tendency to make an erroneous impression upon a jury, and mislead them in their views of the case, a new trial will .be granted. Benham *v.* Cary, 11 Wendell, 83.

*Heydenfeldt* for Respondent.

The first point of error assigned is clearly answered by the case of Daumiel *v.* Gorham, 6 Cal. R. 43, and cases there cited in appellant's brief. It is there held, that the Sheriff is not a trespasser *ab initio* where the goods of the plaintiff are mingled with those of the defendant in execution ; but that to constitute him a trespasser, the goods claimed must be specified, and a demand made for them, followed by a refusal to deliver.

This principle is the same as that applied to private persons where there is a mixture of goods by one, so that the ownership of separate parcels cannot be distinguished. It is founded upon solid reason and sound common sense.

In looking at the facts of this case in reference to this point, it will be seen, that—1st. The goods bought in San Francisco by Wellington were not specified or pointed out to the Sheriff at the time of the levy, or at any time afterwards.

2. That they were not demanded at any time.

3. It was not shown or proved what they consisted of on the trial of this case.

4. Not even their value or approximate value was attempted to be shown.

Now, the charge asked of the Court by the plaintiff is equivalent to an admission of the fraudulent purpose of the transfer from Markley & Stevens to plaintiff. That being the case, the plaintiff could not recover the goods so transferred ; and, therefore, if he could recover at all for other goods which had been mingled with them, he must have shown what they were, and their value.

2. The last remark may be very abundantly applied to the instruc-

Wellington *v.* Sedgwick.

tion given, which is relied upon as the second and only other point of error. The very instruction asked by the plaintiff, which is considered in the first point, admits the fraud of the plaintiff.

The record substantiates this fraud beyond any question. Not only does the evidence disclose the fraud, but it shows a state of facts which rendered the sale absolutely void *per se*, and left no question open for discussion. It seems that after the Sheriff levied on the goods the first time, Wellington, the plaintiff, became, in the language of the statement, his receiptor for the goods; in other words, he was the Sheriff's officer to take charge and custody of the goods: thus standing in relation to them in the Sheriff's place, and being the trustee or agent of both creditor and debtor. This was on the twentieth November. Six days afterwards, to wit, the twenty-seventh of November, the plaintiff, still holding the capacity of custodian of the goods, and being in possession of them, obtains a bill of sale of them from the defendants in execution. At the next term of the Court the execution is set aside for want of a seal, and a new execution issued and placed in the hands of the Sheriff.

During all this time the goods are in Wellington's possession as Sheriff's officer; that position of trust has never been surrendered, and could not be except by a delivery back to the Sheriff. The possession of Wellington was therefore the possession of the Sheriff, and there could not be a trespass in the Sheriff in taking back what he had not parted with.

Nor could Wellington avail himself of his position as trustee to derive any benefit or advantage to himself, to the detriment of his *cestuis que trust*, and more especially to the detriment of the Sheriff, who had never parted with the possession of the goods, and was therefore liable to the plaintiff in execution to the extent of their value.

BALDWIN, J., delivered the opinion of the Court—TERRY, C. J., concurring.

Trespass for taking certain goods.

The defendant justified as Sheriff, claiming that he had execution against Stevens and Markley, and that these goods were, at the time of the levy, their property, or subject to the levy. The case was tried

by a jury, and the errors assigned were instruction given and refused by the Court. There was proof of execution at the suit of one Rand against Stevens and Markley, levied on these goods, and that the execution was afterward set aside by the Court for irregularity. The goods on this levy were put in the hands of a receiptor (or keeper). After the writ was set aside, another issued which was levied on these goods. But before the issuance of this last execution—on the twenty-seventh of November—these defendants executed a bill of sale of the goods levied on, to plaintiffs. The last execution issued on the twenty-eighth of June, 1858, and was levied on the goods sold to plaintiff, and also upon certain other goods bought subsequent to the sale by the plaintiff.

A demand by the plaintiff was made on the Sheriff, January 2, 1858, and refused. Wellington was the receiptor, and had the possession, or claimed to have the possession of the goods, at the time of his purchase, and of the levy of the last execution; and these goods were with other goods in the former place of business of Stevens and Markley—these last having been bought, as it was claimed by Wellington, of other persons since the levy of the first execution. No notice or description of these last goods, nor any designation of them, was given by Wellington at the time of the levy or before the bringing of the suit.

The first execution was set aside on the ground that there was no seal. No appeal was taken from that decision, but it appears to have been acquiesced in, and a new execution issued and levied.

The Court instructed the jury, " if the jury believe, from the testimony, that the agreement between Stevens and Markley, the vendors of the plaintiff, was, that the plaintiff was to pay certain of the debts of his vendors *out of* said goods, then that such sale as against the other creditors of the vendors is fraudulent." This is not the law, as was held in Stanford *v*. Dana. To constitute an assignment within the insolvent law, there must be a trust in favor of the assignor or third persons.

If A sells his property to B, in consideration of so much money to be paid by B to C, though the money is to be paid by or out of a sale of the goods, the contract is not void. There is no difference in such a case between paying to A and paying to A's order or creditor.

We do not understand the evidence to go further than that the con-

sideration of the sale by Markley and Stevens to Wellington was, that Wellington was to pay part of the purchase price to the creditors of this firm ; but this created no trust in the goods assigned in favor of those creditors. Therefore this agreement, even if proved—as the instruction supposes—did not invalidate the contract. We cannot say what influence this instruction had on the verdict.

It is argued, that if Wellington was in possession of the goods levied on by the first execution, as receiptor for the Sheriff, he could set up no title by purchase of the defendants in execution against the Sheriff; that his possession was on a mere bailment from the Sheriff, whose title he could not dispute. Upon the quashing of the execution, he was bound to return the property to the Sheriff, that the Sheriff might deal with it according to law. That the property in the keeping of the receiptor was, in contemplation of law, in the actual hands of the Sheriff, who, on receiving the last execution, might at once have levied on it, and that there was no such change of possession as protected it within the statute from the creditors of the defendant.

We think differently. However suspicious the purchase of the receiptor, under the circumstances, and however strong its tendency to prove fraud and collusion, yet the sale was not *necessarily* void. After and by the levy of the first execution, the property became changed ; it vested in the Sheriff for certain purposes ; but this was only a qualified title of the Sheriff. The defendants might sell the property subject to the process. When the execution was quashed the levy fell with it. The title would then have returned to the defendants in execution, but for their sale to Wellington. The Sheriff would have been bound to return the goods to the defendants. But this duty of the Sheriff was due to the defendants, and they could discharge the Sheriff from it. If they had been the receiptors, unquestionably they would not have been bound to return the goods to the Sheriff in order that the Sheriff might hand them back to them. Neither would their vendee. The possession was changed by the levy of the first execution by the Sheriff, and his taking and keeping the goods ; so that the subsequent sale by the defendants in execution to Wellington was not void by force of the statute requiring possession to accompany and follow a sale.

It seems that these goods so sold were mixed with other goods subsequently bought by Wellington ; and the Sheriff, by virtue of the last execution, levied on these subsequently acquired goods as well as those first seized.

If the goods first bought were fraudulently sold to Wellington, they were, of course, subject to the execution ; and if they were so mixed or confounded with other goods, as that they could not be identified or distinguished, and Wellington failed to point out to the Sheriff, or designate the goods which were not subject to execution, the Sheriff could not be liable for levying on the whole.   But the Sheriff would be bound, after the levy, on notice to him of the goods not liable, to restore them ; but this notice must be specific, apprising him of and designating the particular goods improperly seized, and must be given previously to suit brought.   We do not understand that the case of Daumiel v. Gorham goes any farther than this.

The whole question is one of fraudulent intent, to be left to the jury upon the facts, and is not one of those cases which the Court is authorized to pronounce to be fraudulent as matters of law.

The rulings of the Court below are not in accordance with these views ; and the judgment is reversed and cause remanded, that it may be retried on the principles indicated in this opinion.