[Sac. No. 3504. In Bank.—April 27, 1925.]

O. W. JARVIS, Appellant, v. J. B. WEBBER, as Sheriff, etc., Respondent.

[1] ASSIGNMENTS FOR THE BENEFIT OF CREDITORS—VALIDITY OF — ESSENTIALS.—A statutory assignment for the benefit of creditors must conform to the provisions of the Civil Code, and must be in writing, contain a list of the creditors of the assignor, their places of residence, the amount of their respective demands and the amounts and nature of any security therefor; and if the assignor is a resident of the state, the assignment must be made to the sheriff of the county wherein he resides, whose duty it is to forthwith take possession of all the property assigned to him, and keep the same until delivered by him to the assignee elected by a meeting of the creditors called for that purpose, by notice published and mailed by the sheriff.

[2] ID. — ACKNOWLEDGMENT AND RECORDATION. — An assignment for the benefit of creditors must be acknowledged, or proved and certified in the mode prescribed for recording transfers of real property, and must be recorded; and unless this be done, the assignment is void against other creditors of the assignor not assenting thereto.

[3] ID. — TRUST AGREEMENT FOR BENEFIT OF CREDITORS—INVALIDITY OF.—A trust agreement, considered as a general statutory assignment for the benefit of the creditors of the grantors, is void as against a creditor who did not assent thereto, where it transferred to a trustee all property both real and personal owned by insolvent grantors for the benefit of a named creditor "and all other creditors of the parties of the first part, or either of them, who shall consent to the agreement," to hold, manage, and deal with in such manner as in his judgment shall be for the best interests primarily of such creditors, and secondly, for the best interests of the parties of the first part, the trustee having full power to sell, transfer, pledge or mortgage the property, to borrow money, to declare dividends to the creditors and generally to carry on the business of the first parties, the trust to continue until the entire indebtedness of the creditors for whose benefit the assignment is made shall be paid, satisfied, and discharged, but the agreement not containing a list of the creditors of the grantors and not being recorded, and the assignment not being made to a sheriff.

1. See 3 Cal. Jur. 319.
2. See 3 Cal. Jur. 321.

[4] ID. — TWO KINDS OF ASSIGNMENTS. — Two kinds of transfers or assignments for the benefit of creditors generally are recognized in the code, one being the statutory assignment for the benefit of creditors, enabling an insolvent debtor, through his assignee, to provide for the immediate conversion of the assigned property, or the disposal thereof, and the distribution of the proceeds ratably among the creditors, under which form the consent of the creditors to the transfer is not necessary; and the other form of transfer being one which, while containing certain characteristics of an assignment for the benefit of creditors, is, in effect, only a conveyance in trust by way of paying or securing certain obligations of the debtor, which transfer is not invalid because it does not conform to the provisions of the code relating to assignments for the benefit of creditors, and if made for the benefit of creditors generally, it is protected in its operation as to delivery, and continued change of possession of the property transferred, by the exception contained in section 3440 of the Civil Code, as amended.

[5] ID.—INVALID ASSIGNMENT—POSSESSION—DELIVERY—ATTACHMENT—EXECUTION SALE.—In order that an attempted transfer by debtors, for the purpose of paying or securing one or more creditors—which does not amount to an assignment for creditors generally—may be made effective as against nonconsenting creditors, the conveyance must be executed with due regard to the general principles of law applicable to such transactions and is not within the exception provided by section 3440 of the Civil Code; and where it is found that the property transferred was in the possession and control of the grantors at the time of the execution of the transfer and that the transfer was not accompanied by an immediate, or any, delivery to the grantee and was not followed by an actual and continued change of possession, the transfer is void, and an attachment of the property by a nonconsenting creditor and a sale by the sheriff on execution are valid.

(1) 5 C. J., p. 1047, n. 19, p. 1048, n. 26, p. 1118, n. 10, p. 1127, n. 3, p. 1196, n. 59, p. 1197, n. 73.    (2) 5 C. J., p. 1133, n. 99, p. 1136, n. 40.    (3) 5 C. J., p. 1127, n. 3, p. 1136, n. 40, p. 1197, n. 73.    (4) 5 C. J., p. 1061, n. 71, p. 1159, n. 12 New.    (5) 4 C. J., p. 878, n. 82; 5 C. J., p. 1052, n. 58.

APPEAL from a judgment of the Superior Court of Butte County. J. O. Moncur, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Archibald M. Johnson, A. A. DeLigne and Duard F. Geis for Appellant.

Bond & Deirup for Respondent.

WASTE, J.—The appellant brought an action against the respondent, as sheriff of Butte County, for the recovery of personal property seized under attachment and sold on execution. Judgment was entered for the defendant, and the plaintiff has appealed.

The action in which the attachment was issued was brought by the Commercial Bank of Durham against W. A. D'Egilbert and the Western Rice Growers, Inc. It appears that D'Egilbert, the Western Rice Growers, Inc., and Western Warehouses, Inc., were associated in rice culture in Northern California in the year 1920, D'Egilbert owning a controlling interest in both corporations. On account of continuous rains, starting early in the fall of that year, they were unable to harvest their crops, and were in such financial difficulties that they were unable to pay their employees and their other creditors. D'Egilbert, his wife, and his associate corporations executed a document, purporting to be a bill of sale and a deed absolute, whereby a number of tracts of land and a large amount of personal property, including the property subsequently attached by the sheriff, were transferred to O. W. Jarvis, the appellant herein. This document, hereafter referred to as the deed, was dated January 24, 1921, and was acknowledged by the several grantors, their officers, and agents on February 5th following. It was recorded in the office of the county recorder of Butte County, at the request of D'Egilbert, on February 19. At the same time there was executed another instrument, purporting to be a trust agreement, which was also dated January 24, 1921. It was never acknowledged, but bears the notation that on the eleventh day of March it was "subscribed and sworn to" by D'Egilbert and the officers of the two corporations. In this instrument, hereafter referred to as the trust agreement, the parties named as grantors in the deed, D'Egilbert, the Western Rice Growers, Inc., and the Western Warehouses, Inc., are designated parties of the first part. Appellant, O. W. Jarvis, party of the second part, is designated and referred to as "the trustee." The "Sacramento-San Joaquin Bank and all other creditors of the parties of the first part, or either of them, who shall consent to the agreement" are the parties of the third part;

but the instrument did not contain, nor was there at any time attached thereto, a list of the names of the creditors of the parties of the first part, their places of residence, the amounts of their demands, or the amount or nature of any security therefor. By this instrument the parties of the first part "grant, bargain, sell, convey, assign, transfer, deliver and set over unto said O. W. Jarvis, the second party, . . . designated as said trustee, all the real property owned by them, or either of them, or in which they or either of them, has any interest, and situated . . . in the state of California, and also all the personal property of every kind, nature and description owned by them, or either of them, . . . wheresoever situated, except the household goods and furniture of said D'Egilbert." The holders of more than two-thirds of the issued capital stock of both corporations, parties of the first part, in writing attached to the instrument, approved and consented to the transfer. The evidence indicates that this instrument was delivered to Jarvis on the seventh or eighth day of February, 1921, but it was never recorded.

At the time of the execution and delivery of the deed and trust agreement D'Egilbert and the Western Rice Growers, Inc., were indebted to the Commercial Bank of Durham in the sum of $2,500 and interest. The bank at no time assented to the trust agreement or to any assignment or transfer of the property. It brought the action heretofore referred to, and on the sixteenth day of February, three days before the deed to appellant was recorded, Webber, as sheriff, acting under a writ of attachment issued in the cause, attached personal property of the defendant which is the subject of the present controversy. Judgment in the action was entered in favor of the Commercial Bank of Durham against D'Egilbert and the Western Rice Growers, Inc., for the sum of $3,068.13. A writ of execution was thereupon issued and placed in the hands of the sheriff with instructions to sell all of the personal property held by him under the attachment, or a sufficient amount thereof to satisfy the execution and judgment. Three days before the sale, appellant Jarvis demanded of the sheriff possession of the property about to be sold, asserting a right to the possession thereof under the provisions of section 689 of the Civil Code, which provides that a present interest entitles the owner to the immediate possession of property. In the claim he alleged

himself to be the owner of the attached personal property, and that he had deraigned title thereto through ''an assignment and transfer of title to said personal property'' on or subsequent to the twenty-fourth day of January, the date of the deed and trust agreement hereinbefore referred to, ''accompanied by an immediate and continuous change of possession.'' Disregarding the claim of appellant, the sheriff sold the property at public auction for the sum of $2,824.90. After paying costs of sale, and a preferred laborer's claim amounting to $100, he paid the remainder of the amount received at the sale to the bank in partial satisfaction of its judgment. Thereafter Jarvis brought this action against the sheriff for the recovery of possession of the property sold, or the value thereof in case delivery could not be had.

The trial court found the facts we have heretofore set out, and, in addition thereto, that at the time of the execution of the so-called trust agreement D'Egilbert and the two corporations were insolvent, which fact was known to all of the parties to the transaction. It also found that at the time of the execution and delivery of the instrument D'Egilbert and the Western Rice Growers, Inc., were in the actual possession and control of the property, and the purported transfer was not accompanied by immediate or any delivery to Jarvis, and was not followed by an actual, or continued, or any change of possession. On these facts the court concluded that the purported transfer to Jarvis was an assignment for the benefit of creditors, and that, as to the Commercial Bank of Durham and the attaching sheriff, it was void and of no effect. It therefore held that the sheriff had not unlawfully converted the goods and chattels and rendered judgment for the defendant, from which the plaintiff has appealed, presenting for our determination two main questions: (1) Whether or not the deed and the trust agreement, upon which appellant relies as vesting title in him, constitute an assignment for the benefit of creditors within the meaning of sections 3449–3473 of the Civil Code; (2) if the instruments did amount to an assignment, whether or not they were sufficient to vest title in appellant as against the attaching bank, notwithstanding the fact that they were not intended to, and did not, conform to the code sections. There is also presented the question whether or not immediate and continued change of possession was essential to the

validity of appellant's claim of title as against the attaching creditor. The appellant contends that the instrument denominated a trust agreement was not a statutory assignment for the benefit of creditors, and that the transfer to Jarvis was not, therefore, in violation of any of the provisions of the sections of the code relating to such transactions, *supra*, but that it was in fact a valid, nonstatutory transfer and assignment for the benefit of creditors generally, within one of the exceptions expressed in section 3440 of the Civil Code, making immediate and continued change of possession of personal property unnecessary in such cases. It is his contention that the conveyance was for the purpose merely of conserving and protecting the interests of the grantors in their business and properties, and for that purpose it was intended to give to the Sacramento-San Joaquin Bank, and all their creditors who should assent to the transaction, the security of having the affairs of the grantors managed and controlled by a trustee, and to have the payment of their claims made or provided for to the satisfaction of the trustee, which being accomplished, the property should be returned to the grantors. It was not, therefore, according to the appellant, the usual assignment to convert properties of the grantors into money and apply the same to the claims of creditors generally.

Respondent concedes that it was within the power of D'Egilbert and his associated corporations to execute to the bank, or to particular creditors, or to a trustee for particular creditors, a deed of trust or a mortgage to secure specific debts, even though thereby a preference might be given, and such mortgage or deed of trust could carry with it the right of possession, and that on the other hand it was in their power to execute an assignment for the benefit of creditors in the hope or expectation that all the creditors would join, which assignment would be valid as to all creditors who did join.

The exact nature of the transaction can only be determined by a definite understanding of the legal effect of the purported transfer to appellant. Consequently, an intelligent consideration of the questions presented cannot be had without a more or less extensive statement of the terms of the so-called trust agreement. The instrument recites that D'Egilbert has a controlling interest in the two corporations,

who are his cograntors, and that the parties of the first part have carried on their business in such manner that it would be extremely difficult, if not impossible, to separate their properties, liabilities, and obligations, by reason of which fact it would be for the benefit of all the parties of the first part to have their properties and obligations consolidated and handled as one business and property. Being in need of ready money, and deeming it for the best interests of themselves and their creditors and others interested in their affairs that their business and properties "be managed, directed, operated and controlled by a trustee for the benefit of said parties of the first part, and for the benefit of all of their creditors," and desiring to transfer all their property to O. W. Jarvis, as trustee, for the purpose of having their property administered and disposed of "for the benefit of all the creditors of said parties of the first part," for and in consideration of the sum of ten dollars paid by the trustee, "and for other divers good and valuable consideration moving to said parties of the first part from said trustee, and from the creditors of said parties of the first part," D'Egilbert and the two corporations granted, bargained, sold, conveyed, assigned, transferred, delivered, and set over to Jarvis, as said trustee, all their property heretofore mentioned, "the intent and purpose" of the parties "being that said trustee, upon the execution and delivery of this instrument, shall have and be vested with the same right, title and interest in all the real and personal property belonging to the parties of the first part, or either of them . . . (with the exceptions noted), including the right to operate and carry on the business of said parties of the first part, or either of them, and control and dispose of the property of the parties of the first part, or either of them, to the same extent and with the same full power that said parties of the first part, or either of them, had before the execution and delivery of this instrument; but in trust, nevertheless, for the following uses and purposes, that is to say." Then follow some twenty-five declarations of powers granted to Jarvis, as trustee. The substance of these is that the trustee shall take, hold, manage, and deal with all of the property transferred to him in such manner as in his judgment shall be for the best interests, primarily, of the creditors of the parties of the first part, and, secondly, for the best in-

terests of the parties of the first part, who granted to the trustee full and absolute power and authority to sell and transfer, pledge, mortgage, hypothecate, and exchange the property; to borrow money, to pay, satisfy, adjust, compromise, and discharge debts; to declare dividends out of the funds in his hands as trustee to the creditors of the parties of the first part, the distribution of the dividends so declared by said trustee to be made in the same manner as is provided by law to be made by a trustee in bankruptcy, had each of the parties of the first part been adjudged bankrupt on the date of the trust agreement; to receive and collect moneys, interest, rent, issues, and profits; to invest and reinvest the proceeds of the trust property, and generally to have and exercise all other and additional powers, some special, others general, ''necessary to carry on the business of said parties of the first part, or any of them, fully and to the same extent as said parties of the first part, or any of them, would carry on the same, and to do and perform all and every act and thing necessary to carry on said business.'' The assignment and transfer to the trustee is made absolute and irrevocable, and there is conferred upon him full and absolute power and authority ''to deal with any and all of the trust properties and assets of the trust estate as fully as if the trustee were the sole and exclusive owner thereof in his own right.'' There follows a provision that the trust ''shall continue until all the claims and the entire indebtedness of the creditors of said parties of the first part for whose benefit this assignment is made shall have been fully paid, satisfied and discharged.'' Upon request of the parties of the first part, and their delivering to the trustee a written request or consent of all persons who may be beneficiaries under it, or upon the parties of the first part depositing with the trustee the money to pay in full the obligations of their creditors, the trust shall terminate, upon which event the trustee shall convey the residue of the trust estate remaining in his hands to the parties of the first part. There are other provisions to the effect that the trustee shall not be under any personal liability by reason of the trust; providing what shall be done in the case of his resignation or death, and a final provision that all of the parties of the third part who shall consent to the trust in writing shall be entitled to an equal *pro rata* right, with all other creditors

who consent to the trust in writing, in the benefits thereof. All claims of lien or preference in respect to the property of the trust, or in its benefits, are to be determined and governed upon the hypothesis that each of the parties of the first part had been adjudged a bankrupt on the date of the instrument.

[1] In order to determine the validity of a transaction purporting to be a statutory assignment for the benefit of the creditors of an assignor, we look to the provisions of the Civil Code, found in the title covering that subject. (*Watkins* v. *Wilhoit,* 104 Cal. 395, 399 [38 Pac. 53].) It is therein provided that an insolvent debtor may, in good faith, execute an assignment of property in trust for the satisfaction of his creditors (section 3449). Such assignment must conform to the provisions of the code sections. It must be in writing, must contain a list of the creditors of the assignor, their places of residence, the amount of their respective demands and the amounts and nature of any security therefor. If the assignor is a resident of the state, the assignment must be made to the sheriff of the county wherein he resides, whose duty it is to forthwith take possession of all the property assigned to him, and keep the same until delivered by him to the assignee elected at a meeting of the creditors called for that purpose, by notice published and mailed by the sheriff. [2] There is the further requirement (section 3458) that an assignment for the benefit of creditors must be acknowledged, or proved and certified in the mode prescribed by the chapter on recording transfers of real property, and must be recorded. Unless that be done, the assignment is void against every creditor of the assignor not assenting thereto (section 3459). [3] The trust agreement in this case did not contain a list of the creditors of the grantors, it was not made to a sheriff, and it was not recorded. Considered, therefore, as a general statutory assignment for the benefit of the creditors of D'Egilbert and the two corporations, it was void against the Commercial Bank of Durham, which did not assent thereto. (*Wilhoit* v. *Lyons,* 98 Cal. 409, 412 [33 Pac. 325]; *Garn* v. *Thorwaldson,* 40 Cal. App. 62, 66 [180 Pac. 9, 11].)

Certain transfers made by insolvent debtors are not affected by the provisions of the title of the Civil Code relating to assignments for the benefit of creditors, and appel-

lant contends that the transaction between his grantors and himself is within the exception. The sections of the code relating to assignments for the benefit of creditors were made part of the Civil Code in 1872. At the same time another section of the code was enacted, which has not been changed. It provides that a debtor may pay one creditor in preference to another, or may give to one creditor security for the payment of his demand in preference to another (section 3432). Section 3451 of the code, found in the title relating to assignments for the benefit of creditors, provided, as enacted in 1872, that the provisions of the title did not affect the power of a person, although insolvent, to transfer property to a particular creditor for the purpose of paying or securing the whole or a part of a debt owing to such creditor, whether in his own right or otherwise. The section bearing on the subject attempted no definition of assignments for the benefit of creditors, and the earlier decisions of the court were not always clear on the question. Matters stood in this situation when the case of *Sabichi* v. *Chase*, 108 Cal. 81 [41 Pac. 29], was decided. The court there said (page 86) that there are qualities which, when appearing in an instrument of transfer, characterize it as among those required to conform to the statute, or else be treated as void as to creditors. It was contended in that case that a conveyance of property to trustees to be disposed of, converted into money, and distributed ratably among ten designated creditors, was in the nature of a mortgage to secure the debts of certain creditors. The court held the transaction amounted to an assignment for the benefit of creditors. It said: ''The distinction between such an instrument and an assignment for the benefit of creditors has been thus stated: 'If the conveyance is to a trustee, and the debtor intends to divest himself, not only of the title to the property, but of all control over it; if it is intended as an absolute conveyance of all of his property, and is made for the purpose of securing a distribution of its proceeds among his creditors, or a portion of them, in legal effect it is an assignment for the benefit of creditors, no matter what name or designation the parties may have given it. On the other hand, if the intention of the debtor is merely to secure his debt to one or more of his creditors, and the conveyance is not intended as an absolute disposition of his property, but he reserves

to himself a right therein, the conveyance will be treated as
a mortgage, even though the debtor is insolvent at the time
and it covers all his property and but a portion of his debts
are secured by it.' (*Caldwell's Bank* v. *Crittenden*, 66
Iowa, 240, 241 [23 N. W. 646].) And this seems to be a
fair statement of the result of the authorities upon this
much vexed question, though great diversity is found in the
adjudged cases, due largely to the differences which obtain
in the statutes of the several states which have sought to
regulate or suppress the evils supposed to arise from the
unrestricted right to make preferential assignments allowed
by the common law. (See *May* v. *Tenney*, 148 U. S. 64 [37
L. Ed. 368, 13 Sup. Ct. Rep. 491, see, also, Rose's U. S. Notes].)
'The material and essential characteristic of a general as-
signment is the presence of a trust' (*Brown* v. *Guthrie*, 110
N. Y. 441 [18 N. E. 254]; Burrill on Assignments, sec. 3);
and while it cannot be said that every transfer of property
to trustees for the benefit of creditors is an assignment
within the statute (*Lawrence* v. *Neff*, 41 Cal. 566; *Handley*
v. *Pfister*, 39 Cal. 283, 2 Am. Rep. 449; *Priest* v. *Brown*, 100
Cal. 626 [35 Pac. 323]), yet, when a continuing trust is
created presenting the features prominent in this case, we
think it must be held that the transfer is such an assignment
as the legislature designed to regulate by the provisions
of the code (Civ. Code, secs. 3449–73); if not, then those
provisions would as well be repealed.

"It has been several times assumed in this court that such
a trust indicates an assignment of that nature. (*Dana* v.
*Stanford*, 10 Cal. 269; *Wellington* v. *Sedgwick*, 12 Cal. 469;
*Saunderson* v. *Broadwell*, 82 Cal. 132, 133 [23 Pac. 36].)
The provision that a surplus of proceeds remaining after
satisfaction of the claims of the creditors named should
be returned to the grantors does not, as supposed by appel-
lants, distinguish the contract as one of security only. (*Hall*
v. *Denison*, 17 Vt. 318; *Lochte* v. *Blum*, 10 Tex. Civ. App.
385 [30 S. W. 925].) The reservation of an interest in the
possible surplus—not in the property itself—marks the
transaction more clearly as an assignment for the benefit of
creditors. (*Kenefick* v. *Perry*, 61 N. H. 364.)'' (See, also,
3 Cal. Jur., pp. 313, 314.)

The court also held in the case (*Sabichi* v. *Chase, supra*,
at p. 85) that the provision of the section of the code

(*supra*), allowing a debtor to pay one creditor in preference to another, or to give one creditor security in payment of his demand in preference to another must be construed in connection with the other provision (*supra*), that an assignment for the benefit of creditors is void as against any creditor of the assignor not consenting thereto, if it gives a preference of one debt or class of debts over another, and that the law must be construed as virtually saying to the debtor that he may give a preference by paying or securing a creditor, but such preferred payment or security must not take the form of an assignment for the benefit of creditors. The result of the decision in *Sabichi* v. *Chase* was to cast some doubt on the correctness of the rule laid down in the earlier cases cited by the court in the opinion relative to transfers for the purpose of paying or securing a particular creditor. (Code Commissioner's note.)   In 1903 this court decided the case of *Heath* v. *Wilson*, reported in 139 Cal., at page 362 [73 Pac. 182]. In that case a deed, absolute in form, was executed by the debtor. Contemporaneously with the execution of the deed, the grantor and grantee verbally agreed that the property thereby conveyed should be held in trust for certain uses and purposes, which were subsequently set forth in an instrument of even date with the deed. The purposes of the trust were in many material respects similar to those of the case at bar. It was attempted there, as here, to apply the rule laid down in *Sabichi* v. *Chase, supra*. The court again reviewed the earlier decisions, and decided (page 366) that sections 3432 and 3451 of the Civil Code expressly authorize a conveyance for the purpose of paying or securing certain creditors, and that such transfer was not invalid because it did not conform to the provision of the code relating to assignments for the benefit of creditors generally.

While the case of *Heath* v. *Wilson* was pending, in fact only a few weeks before the decision was handed down, section 3440 of the Civil Code, providing that certain transfers of personal property are conclusively presumed to be fraudulent, if made by a person having at the time the possession or control of the property and not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things transferred, was amended (Stats. 1903, p. 111) to provide that the provisions of the

section should not apply or extend to any transfer or assignment made for the benefit of creditors generally. In 1905 (Stats. 1905, p. 622), section 3451 of the code was amended by providing that the provisions of the title relating to assignments for the benefit of creditors do not affect the power of a person, although insolvent, to transfer property in good faith to a particular creditor, or creditors, or to some other person or persons in trust for the purpose of paying or securing the whole or part of a debt owing to such creditor or creditors. Under a more recent amendment (Stats. 1917, p. 255), the provisions of section 3440, *supra,* relating to fraudulent transfers, are declared not to apply or extend to any transfer or assignment, "statutory or otherwise," made for the benefit of creditors generally.

[4] We think it must be conceded, therefore, that two kinds of transfers or assignments for the benefit of creditors generally are recognized in the code sections we have enumerated. One is the statutory assignment for the benefit of creditors, enabling an insolvent debtor, through his assignee, to provide for the immediate conversion of the assigned property, or the disposal thereof, and the distribution of the proceeds ratably among the creditors. (Civ. Code, sec. 3449 et seq.) If the debtor adopts this method of satisfying his creditors, it matters not whether the creditors give their consent to the transfer. If the provisions of the code are complied with, the assignment is binding on consenting and nonconsenting creditors alike. The other form of transfer is one which, while containing certain characteristics of an assignment for the benefit of creditors, is, in effect, only a conveyance in trust by way of paying or securing certain obligations of the debtor. These transfers are not invalid because they do not conform to the provisions of the sections of the code relating to assignments for the benefit of creditors. (Civ. Code, secs. 3432 and 3451; *Heath* v. *Wilson, supra.*) If made for the benefit of creditors generally, such conveyances are protected in their operation as to delivery, and continued change of possession of the property transferred, by the exception contained in section 3440 of the code as amended. But in the present case we are unable to agree with appellant that the transaction whereby D'Egilbert and his allied corporations transferred the property to Jarvis resulted in an assignment for the benefit of creditors

generally. By its terms, it inures only to the benefit of one named creditor of the grantors, "and all other. creditors . . . who shall consent to the agreement," the final provision being that the creditors "who shall consent to the trust in writing shall be entitled to an equal *pro rata* right, with all other creditors who consent to the trust in writing, in the benefits thereof." A nonconsenting creditor is not bound by such a transfer, and his consent thereto cannot be compelled by any act of the debtors, the trustee, or the other creditors. [5] In order, therefore, that an attempted transfer by a debtor, for the purpose of paying or securing one or more creditors—which does not amount to an assignment for creditors generally—may be made effective as against nonconsenting creditors, the conveyance must be executed with due regard to the general principles of law applicable to such transactions. We are unable to construe the transfer in this case as an assignment for the benefit of creditors generally. It was, therefore, not within the exception provided by section 3440, *supra.* The question whether or not delivery and change of possession attended the transaction thus becomes a material consideration in the case.

The trial court found that the deed and trust agreement were executed at a time when D'Egilbert and the Western Rice Growers, Inc., were in possession and control of the property, and that the transfer was not accompanied by an immediate, or any, delivery to the appellant, and was not followed by an actual and continued change of possession. Appellant challenges the sufficiency of the evidence to support the finding. The testimony tending to support it, he contends, was "too insubstantial, indirect and immaterial to amount to a contradiction of the main facts established by direct and positive testimony." But, whether, under the tests necessary to determine the issue, there was a delivery and change of possession was a question of fact to be determined by the trial court upon a consideration of all the evidence in the case. (*Hassell* v. *Bunge,* 167 Cal. 365, 367 [139 Pac. 800].) Its decision upon that, as upon the other issues of fact, is conclusive on this court on appeal, for, reading the evidence in the light and with the inferences most favorable to the conclusion reached below, we cannot say that the finding is without substantial support in the

record. It follows that the attempted transfer of the personal property to appellant in this case was conclusively presumed to be fraudulent, and, therefore, void against nonconsenting creditors. (Civ. Code, sec. 3440.) There was, therefore, nothing in the transaction which militated against the attachment levied by the Commercial Bank of Durham (Civ. Code, sec. 3431), or which prevented the respondent sheriff from selling the attached property under the execution placed in his hands.

The judgment is affirmed.

Myers, C. J., Shenk, J., Seawell, J., Lawlor, J., Lennon, J., and Richards, J., concurred.

Rehearing denied.

All the Justices concurred.