[Civ. No. 738. Fourth Appellate District.—April 8, 1932.]

W. W. KAYE, Respondent, v. HENRY A. JACOBS, Appellant.

Jacobs, Blanckenburg & May for Appellant.

Siemon & Garber for Respondent.

JENNINGS, J.—The action herein was instituted by plaintiff to recover from defendant Jacobs certain trust funds in the latter's possession, being the proceeds of a sale of personal property transferred to Jacobs by M. M. Lichtenstein and for the purpose of impressing a lien upon and of subjecting to execution sale certain real estate transferred to defendant Jacobs by the owner, M. M. Lichtenstein. From a judgment rendered in favor of plaintiff, defendant Jacobs appeals.

The record presents the following facts: On July 1, 1916, articles of incorporation of the Lichtenstein Company were executed by three incorporators. Among the purposes for

which the corporation was stated to be formed was that of buying, selling and dealing in jewelry. The place where the principal business of the corporation would be transacted was stated to be in San Francisco, California. The articles of incorporation were filed in the office of the county clerk of the city and county of San Francisco and in the office of the Secretary of State during the month of July, 1916. They appear also to have been filed in the office of the county clerk of Kern County on September 17, 1921. On September 8, 1921, a resolution was unanimously passed at a regular meeting of the corporation, changing the principal place of business from the city and county of San Francisco to the city of Bakersfield, Kern County. The removal of the place of business of the corporation from San Francisco to Bakersfield evidently took place during the year 1921. At the time the resolution changing the place of business was adopted, M. M. Lichtenstein was the president of the corporation. During the time that the corporation operated in Bakersfield, Lichtenstein was its president and general manager. On May 1, 1924, the plaintiff, Kaye, and M. M. Lichtenstein were indebted to the Security Trust Company of Bakersfield in the sum of $4,000. This indebtedness was evidenced by their joint and several promissory note for the amount specified, made payable to the trust company. On August 13, 1926, Kaye brought suit in the Superior Court of Kern County against M. M. Lichtenstein for the recovery of the amount of the note with interest. The complaint in this action alleged the execution of the note by Kaye and Lichtenstein and further alleged the execution of a contract of indemnity on May 1, 1924, whereby Lichtenstein agreed, in consideration of the transfer to him by Kaye of certain shares of stock in the DeLuxe Onyx Company, to assume and pay all obligations of the DeLuxe Onyx Company, and in particular to pay and discharge the promissory note executed by Kaye and Lichtenstein in favor of the Security Trust Company, and that Kaye had duly performed all conditions required of him under the above-described agreement, but that Lichtenstein had failed and refused to discharge the promissory note made payable to the Security Trust Company as he had agreed to do. A writ of attachment issued in this action and was served upon Henry A. Jacobs, notifying him that all moneys, credits, debts, or other personal

property in his possession or under his control belonging to Lichtenstein were attached and levied upon. A second writ of attachment was levied upon certain real property standing in the name of Henry A. Jacobs. M. M. Lichtenstein was duly served with process in the action thus instituted and made no appearance therein. His default was duly entered and on January 28, 1927, judgment was rendered against him in the amount of $4,693.34, together with interest and costs in favor of Kaye. Thereupon a writ of execution issued and was served upon Henry A. Jacobs, together with a written notice that any personal property in his possession or under his control belonging to Lichtenstein was attached and levied upon. In the meantime, and prior to October 6, 1924, M. M. Lichtenstein had become the owner of all stock of the Lichtenstein Company with the exception of two or three shares of stock issued to directors of the corporation to enable them to qualify as directors, and at some time prior to October 6, 1924, Lichtenstein moved the business of the Lichtenstein Company to Hollywood, California, and there conducted a retail jewelry business in the Hotel Christie under the name of the Christie Jewelry Company. On October 6, 1924, M. M. Lichtenstein executed the following instrument:

"Hollywood, Calif., Oct. 6, 1924.

"I hereby assign all interest in my business known as the Christie Jewelry Co., to Henry A. Jacobs, with the understanding that Mr. Jacobs is to act for all the creditors.

"M. M. LICHTENSTEIN,

"Pres. CHRISTIE JEWELRY CO."

On November 28, 1924, M. M. Lichtenstein executed deeds by which he conveyed to Henry A. Jacobs two parcels of real estate in Kern County. The deeds were recorded in the office of the county recorder of Kern County. The defendant Jacobs in due time sold the stock of jewelry in the Hollywood store and one parcel of real estate, and from the proceeds paid to creditors of the jewelry business a dividend upon their claims. At the time the action herein was instituted appellant had in his possession from the proceeds thus realized the sum of $1,469.23, and had not disposed of the second parcel of real estate.

The question that first arises on the appeal from the judgment is whether the instrument executed by M. M.

Lichtenstein on October 6, 1924, hereinabove set out, operated as an assignment by the Christie Jewelry Company of all of its assets to appellant, Jacobs, for the benefit of its creditors. It will be observed that the instrument was signed by Lichtenstein and that there was appended to his signature the words, ''Pres. Christie Jewelry Co.'' The body of the instrument reads, ''I hereby assign all interest in my business known as the Christie Jewelry Co., etc.'' The language thus used indicates that the signer was attempting to make a personal, individual assignment of his assets for the benefit of his creditors. Manifestly it could not operate as an assignment by a corporation known as the Christie Jewelry Company because, so far as is made to appear, the Christie Jewelry Company had no corporate existence. █ If, however, the name Christie Jewelry Company was a fictitious name adopted by Lichtenstein, who owned the whole stock of goods and fixtures, the instrument would operate, as its phraseology indicates, as an individual assignment by Lichtenstein. █ Nevertheless, appellant contends that as the Lichtenstein Company had a corporate existence and the evidence shows that the business and assets of this corporation of which M. M. Lichtenstein was president and manager were moved to Hollywood, therefore the instrument operated as an assignment by the Lichtenstein Company for the benefit of its creditors. It is difficult to reconcile such a contention with the plain meaning of the language employed in the instrument of assignment. As heretofore noted, the language employed in the body of the instrument is language which indicates an intention on the part of the signer to make an individual assignment. The only language which in any respect indicates a different intention is that which is found in the phrase ''known as the Christie Jewelry Co.'' which occurs in the body of the instrument and the words ''Pres. Christie Jewelry Co.'' which appear underneath the signature appended to the instrument. The phrase ''known as the Christie Jewelry Co.'' obviously modifies the language immediately preceding it and is clearly descriptive of ''my business''. Equally clear is it that the words ''Pres. Christie Jewelry Co.'' constitute merely descriptive phraseology. Under such circumstances the most that can be said in favor of appellant's contention is that by the use of the language indi-

cated it was left in doubt whether M. M. Lichtenstein intended to make an assignment for the Lichtenstein Company, of which he was president, or whether he intended to make a purely personal assignment for the benefit of creditors, and that resort might be had to parol evidence to determine what his intention really was. (*Southern Pac. Co.* v. *Von Schmidt Dredge Co.*, 118 Cal. 368 [50 Pac. 650].)  The trial court found that the instrument was intended to operate as an individual assignment by M. M. Lichtenstein for the benefit of a certain class of creditors. This finding is amply supported by the evidence produced at the trial. The finding is proper even though the court may have concluded that the instrument was intended to operate as ·an assignment by Lichtenstein as president of the Lichtenstein Company, for the evidence clearly shows that on October 6, 1924, Lichtenstein was the owner of all of the stock in the company except two or three shares issued to directors for the purpose of allowing them to qualify, and that in fact the corporation was so entirely under the control and domination of M. M. Lichtenstein that when he decided to move the business from Bakersfield, in the language of appellant, testifying as a witness at the trial, "he packed everything up, bag and baggage and established the business in Hollywood" and, without any pretense of corporate action, adopted an entirely new and different name under which he thereafter operated the business. Under such circumstances the trial court was warranted in casting aside the legal fiction of distinct corporate existence and in finding that the instrument of assignment was in reality a personal, individual assignment of M. M. Lichtenstein. (*Llewellyn Iron Works* v. *Abbot Kinney Co.*, 172 Cal. 210 [155 Pac. 986]; *Minifie* v. *Rowley*, 187 Cal. 481 [202 Pac. 673]; *Wenban Estate, Inc.*, v. *Hewlett*, 193 Cal. 675 [227 Pac. 723].) It remains to consider whether the assignment of the stock in trade was valid against respondent.

 It is clear that the instrument of October 6, 1924, could not operate as an assignment under the provisions of section 3449 of the Civil Code, since the instrument did not comply with the statutory requirements. It did not contain a list of the names of creditors of the assignor with the amounts of their respective demands nor was the assignment made to the sheriff of the county wherein the assignor re-

sided, as required by section 3449 of the Civil Code.
■ Furthermore, it was not acknowledged nor was it recorded, as required by section 3458 of the Civil Code. It was therefore void against respondent, a creditor who had not assented thereto (sec. 3459, Civ. Code). ■ However, section 3432 of the Civil Code, expressly permits a debtor to pay to one creditor or to give to one creditor security for the payment of his demand in preference to another, and section 3451 of the Civil Code, declares that the provisions of the title relating to assignments for the benefit of creditors shall not affect the power of an insolvent debtor to transfer property in good faith to a particular creditor, or creditors, or to some·other person in trust for such particular creditor or creditors for the purpose of paying or securing the whole or part of a debt owing to such creditor or creditors. It has been held that the provisions of sections 3432 and 3451 of the Civil Code, expressly authorize a conveyance for the purpose of paying or securing certain creditors. (*Heath* v. *Wilson,* 139 Cal. 362 [73 Pac. 182].) In the decision cited it is said that sections 3432 and 3451 of the Civil Code, amount to no more than a declaration of the rule of the common law that the owner of property, even though insolvent, when there is no bankrupt or insolvent law making a different disposition of it, may lawfully transfer it to the payment of any creditor or creditors, to the exclusion of others. Since, however, the assignment which was attempted to be made by the instrument of October 6, 1924, was an assignment of a stock in trade, it must be considered with reference to the provisions of section 3440 of the Civil Code. This section expressly provides that the sale, transfer or assignment of a stock in trade, in bulk, will be conclusively presumed to be fraudulent and void as against the existing creditors of the vendor, transferor, or assignor unless the notice required by the statute shall be given. Assignments for the benefit of creditors generally are expressly exempted from the requirements of the statute. It is not contended that the assignment attempted to be made by the instrument under consideration was intended as an assignment for the benefit of creditors generally, but it is conceded that it was intended to operate as an assignment of a stock in trade for the benefit of a certain class of creditors, viz., the mercantile creditors or creditors of the jewelry business. It

was not, therefore, under the circumstances disclosed, an assignment exempted from the provisions of section 3440 of the Civil Code. (*Jarvis* v. *Webber*, 196 Cal. 86 [236 Pac. 138].) The court found that no notice of the intended sale or transfer was given in any manner prior to the transfer. This finding is supported by the testimony of appellant that notice was not given and no attack is made upon it. ▮ The court further found that the transfer from Lichtenstein to appellant was not accompanied by immediate delivery or followed by actual or continued change of possession. Inasmuch as the transfer was clearly a transfer of a stock in trade in bulk, it is at least doubtful whether the finding with reference to delivery or actual or continued change of possession was necessary. If so, it was a question of fact to be determined by the trial court upon a consideration of all of the evidence and the finding is conclusive on appeal, unless, reading the evidence in the light and with the inferences most favorable to the conclusion reached by the trial court, it shall be said that the finding is without substantial support in the record. (*Hassell* v. *Bunge,* 167 Cal. 365 [139 Pac. 800]; *Jarvis* v. *Webber, supra; McCaffey C. Co., Inc.,* v. *Bank of America,* 109 Cal. App. 415 [294 Pac. 45].) The testimony of appellant himself amply sustains the court's finding in this regard for, while he testified that he immediately placed a representative in charge of the business, he also testified that during the sixty-day period when he operated the store, it was operated under the name of Christie Jewelry Co., that Lichtenstein continued to remain in the store as a paid salesman, that the same clerks who had theretofore been employed in the store were retained, and that there was nothing in the situation that constituted notice to the general public that there had been a change of ownership. These circumstances were amply sufficient to justify the court in finding that there was not an open, visible, unequivocal change of possession, manifested by such substantial outward signs as to make it evident to the world that the control of the owner had wholly ceased, and that another was openly exercising exclusive dominion over the property (*McCaffey C. Co.* v. *Bank of America, supra*).

▮ The trial court also found that the transfer of the real property from Lichtenstein to appellant, upon which

respondent sought by this action to impress a lien, was made without consideration and that the transfer was accomplished by a deed absolute and unconditional under an oral agreement between appellant and Lichtenstein that appellant should sell the land and use the proceeds obtained from such sale in paying claims of one class of creditors of Lichtenstein *pro rata* to the exclusion of other creditors and not to his creditors generally, upon condition that each and all of said creditors should release Lichtenstein from further demands, but that none of such conditions were expressed in the deed of conveyance and respondent was not one of the class of creditors for whose benefit the transfer was made. This finding is attacked by appellant on the ground that the evidence shows that the transfer of the real property was made for a good and sufficient consideration and that it was not subject to objection by respondent. The finding is not vulnerable to the attack made upon it. The evidence is ample to sustain the finding. The transfer of the real property to appellant was made by deed absolute in form and unconditional, but upon the parol understanding between Lichtenstein and appellant that the land should be sold and the proceeds distributed ratably among the creditors of the Christie Jewelry Company. Appellant further testified that he agreed with Lichtenstein that in consideration of the execution by the grantor of the deeds conveying the real property he would insist upon all creditors giving him a release of any further demands upon Lichtenstein. It is apparent that the transfer of the real property amounted to an assignment by the grantor of all interest that he had in the real property and that it was an assignment for the benefit of one class of the grantor's creditors, the mercantile creditors or creditors of the jewelry business, to the exclusion of other creditors. Respondent being excluded from participation in the proceeds to be derived from the sale of the real property and not having assented to the assignment was entitled to object to it and the court properly sustained his objection (*Sabichi* v. *Chase,* 108 Cal. 81 [41 Pac. 29]; *Jarvis* v. *Webber, supra*).

One further point remains to be considered. Appellant by his answer raised the issue of laches. While no express finding was made by the court upon the issue it must be assumed in support of the judgment that it was

decided adversely to appellant. ▪ It is now contended that, as the evidence showed that there was a definite lapse of twenty-two months between the date of the assignment by Lichtenstein to appellant and the institution of the action by respondent to recover from Lichtenstein under the indemnity agreement and still further delay by respondent in directly attacking the assignment to appellant, the court's denial of the claim of laches is not justified. It is perhaps a sufficient answer to this contention to point out that this is a matter which reposes in the sound discretion of the chancellor (10 Cal. Jur., p. 526, sec. 64). Furthermore, while lapse of time is an important element in determining laches it is not conclusive. Delay alone does not constitute laches unless it is accompanied by circumstances from which prejudice may result to the person complaining of it or to some other person. (*McGibbon* v. *Schmidt*, 172 Cal. 70, 74 [155 Pac. 460].) ▪ The judgment rendered affects only the balance of the funds remaining in appellant's hands and the real property which stood in his name at the time the writ of attachment in the suit by respondent against Lichtenstein was levied. No attempt was made to charge appellant with funds disbursed by him prior to levy of the attachment writ. It is apparent, therefore, that no injury or disadvantage resulted to appellant by reason of the delay.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 30, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 2, 1932.